### WINTER v. DEPARTMENT OF HEALTH OF CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department.  May 29, 1912.)

MUNICIPAL CORPORATIONS (§ 220*)—HEALTH DEPARTMENT—CONTRACT OF
        EMPLOYMENT—ACTION FOR BREACH—EVIDENCE.
        Plaintiff, a trained nurse, who had been employed in a hospital for
    contagious diseases, sued the health department, a quasi municipal cor-
    poration created by the charter of the city of New York and empowered
    to maintain hospitals for contagious diseases and to delegate to certain
    officers the authority requisite to carry out its general powers and sub-
    ject to suit in its own name, for breach of her contract of employment
    and to recover necessary expenses of sickness contracted at the hospital,
    and alleged that the supervising nurse had told her when hired that
    nurses were taken care of if they contracted disease, and their salary
    continued until they were able to work again, and offered proof to estab-
    lish that she had been lawfully hired as a trained nurse.  Held, that the
    exclusion of a question to the supervising nurse who had hired plaintiff,
    as to any existing rule or practice of the department in respect to the
    care and continued salary of nurses when plaintiff was hired, was error.
        [Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig.
    §§ 599-608; Dec. Dig. § 220.*]

Appeal from Trial Term, Kings County.

Action by Nan Winter against the Department of Health of the
City of New York.  From a judgment of the Supreme Court dis-
missing the complaint, plaintiff appeals.  Reversed, and new trial
granted.

Argued before JENKS, P. J., and THOMAS, CARR, WOOD-
WARD, and RICH, JJ.

Ralph G. Barclay, of Brooklyn, for appellant.

James D. Bell, of Brooklyn (Sanders Shanks, of Brooklyn, on the
brief), for respondent.

CARR, J.  On the trial of this case, the plaintiff's complaint was
dismissed at the close of her evidence, and from the judgment of dis-
missal the plaintiff now appeals.

It appears from the proofs taken at the trial that the plaintiff was
engaged by the defendant as a trained nurse in a hospital which it
maintained for contagious diseases in the borough of Brooklyn.  She
applied for employment at the hospital in question, and there met a
Miss Murphy, who was then in charge of said hospital as "supervisor
of nurses."  A conversation took place between her and Miss Murphy,
in which the latter stated the rate of compensation payable to trained
nurses employed in the said hospital as $40 a month with board, with
an increase to $45 per month, and at the end of a year and a half's
service $50 a month.  The plaintiff demurred to these rates, on the
ground that they were too small for the risk that was taken by the

nurses in a contagious disease hospital, and the supervising nurse answered:

"Remember, though, we take care of you if you contract disease, and the salary will continue till you are able to work again."

The plaintiff thereupon entered upon employment as a trained nurse in the hospital in question, and her name was placed upon the pay roll of the defendant. While she was engaged in such service, she injured one of her fingers. The injury progressed, and her hand and arm became infected with sepsis. The defendant furnished a surgeon who amputated the injured finger. The trouble still continued, and the plaintiff became dangerously ill and was removed from the Contagious Diseases Hospital to the Kings County Hospital, which is an institution maintained by another department of the government of the city of New York, namely, the Department of Charities. While in the latter institution, the illness of the plaintiff became so severe that her life was imperiled, and at the suggestion of the physician in charge, the plaintiff, through her mother, hired trained nurses for night and day attendance upon her. After she became sufficiently well to be removed from this hospital, a period of convalescence set in. During the time she was in the hospital, as well as for a number of months while she was convalescing, her name continued upon the pay roll of the defendant, and she received the monthly compensation agreed upon. She finally abandoned her position as nurse, and did not return to service under the defendant.

She brought this action for a breach of contract to recover the expenses of hiring the day and night trained nurses while she was in the Kings County Hospital, and further expenses attendant upon her period of convalescence. It further appeared from the proofs that the hiring of these outside nurses to care for the plaintiff while she was in the Kings County Hospital was a matter of necessity, as that institution was unable to provide her with the attendance that was absolutely requisite, considering her gravely serious condition.

The learned trial court was of opinion that the supervising nurse, Miss Murphy, had no power to make the contract upon which the plaintiff claims to recover for an alleged breach thereof. He held further that it was incumbent upon the plaintiff to show affirmatively the existence of such a power in the supervising nurse.

Miss Murphy was called as a witness by the plaintiff, and she did not contradict the story of the hiring as told by the plaintiff herself. She testified, however, that there was a schedule of salaries for nurses at the hospital in question, and that the furnishing of board and lodging to the nurses was included in the compensation to be paid. She was asked by the plaintiff's counsel if there was anything further in regard to any of the nurses who might be taken ill while in the performance of their duties in the hospital. This question was objected to by the defendant, the objection sustained, and an exception taken.

On this appeal, the respondent contends that this action is controlled by the authority of McDonald v. Mayor, 68 N. Y. 23, 23 Am. Rep. 144. In that case, the plaintiff sought to recover for supplies furnished to the city of New York for the repair of a highway. The

charter of that city, however, contained a provision which restricted and regulated the method of making contracts for such purpose, and the contract under which the plaintiff claimed was unquestionably in violation of the charter regulations and restrictions. While the learned court discussed the various principles of law which applied to the liability of municipal corporations on contracts made by its officers, it expressly declared as follows:

"This opinion goes no further than to hold that where a person makes a contract with the city of New York for supplies to it, without the requirements of the charter being observed, he may not recover the value thereof upon an implied liability."

This was then the law, and is yet the law; but the learned counsel for the appellant does not call to the attention of this court any provision of the charter of the city of New York which in any way regulates the manner or restricts the power of hiring trained nurses for the service of the city in its hospitals. The defendant is a quasi municipal corporation, created by the charter of the city of New York, wherein it is provided that it may sue and be sued in its own name. It is given power to maintain hospitals of this character, and to delegate to certain officers, known as "sanitary superintendents," the exercise of powers requisite to carry out the general power.

The proofs offered by the plaintiff would tend to establish that she had been hired lawfully as a trained nurse in the hospital in question, and she should have been allowed to prove, if she could, that the rate of compensation for such service included an agreement on the part of the defendant to take proper care of her if she became ill while in the defendant's service.

It was error, therefore, to exclude the question addressed to the supervising nurse in regard to any existing rule or practice of the department in this respect, when the plaintiff was hired. The plaintiff had testified that the supervising nurse had made a definite statement on this point, and, if such was the rule and practice of the defendant in engaging its nurses, it would have been competent and relevant for the supervising nurse to so testify. If there was such a rule and practice of the department, and such was made known to the plaintiff, then it should form a part of the consideration of the contract of hiring. Of course, the "supervising nurse," who was herself but an employé, had no implied power to make, on her own initiative, a contract importing such terms. We think there should be a new trial.

Judgment reversed, and a new trial granted; costs to abide the event. All concur.